**In re Debra HENLEY**

**Debra Henley, Plaintiff,**

v.

**Cameron Auto Pawn, Defendant.**

**Bankruptcy No. 97–51481 S.**
**Adversary No. 98–5006.**

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

Nov. 23, 1998.

Sara M. Sawyer, Monticello, AR, for Debtor.

Phyllis M. McKenzie, Little Rock, AR, for Defendant.

M. Randy Rice, Chapter 7 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon trial of the adversary proceeding and the conclusion of the Motion for Relief from Stay.

### I.

On December 17, 1996, the debtor entered into an agreement with Cameron Auto Pawn ("Cameron") to pawn her 1990 Jaguar.[1] The debtor obtained a loan in the amount of $2,400, signed a Title Pledge Agreement and a Security Agreement and gave title to the vehicle to Cameron. Under the agreements the debtor was to repay the full amount of the debt within thirty days together with two-percent interest and a "customary fee" of $432. The total due on January 16, 1997, would be $2,880. The total charges, interest and "customary fee," on the loan constituted twenty-percent of the loan amount. The loan was renewable for periods of thirty days for an indefinite period of time. However, under the terms of the agreement and as permitted

---

1. This was the second time the debtor pawned the Jaguar with Cameron Auto Pawn. However, in the first instance, the debtor repaid the loan within the thirty day period provided in the agreement.

by Tennessee statutes, Tenn.Code Ann. § 45–15–111, the charges accrued monthly. Although it was its usual practice to do so, Cameron failed to give to the debtor a Truth in Lending Disclosure Statement as required by the Truth in Lending Act, 15 U.S.C. § 1601 et seq.[2]

When the debtor failed to pay the loan as agreed on January 16, 1997, Cameron renewed the agreement monthly, pursuant to the agreement's terms, from January through November 1997. For each 30-day period, the interest charge of $48 and the customary fee of $432 accrued. As of the date the bankruptcy case was filed, the balance due for the principal, interest and customary fees was $8160. The debtor made no payments on the loan.

The debtor's failure to repay the loan in January prompted Cameron to attempt to locate the debtor and the collateral by employing a locator service.[3] In December 1997, Cameron discovered that the debtor had removed the vehicle from the Tennessee in violation of the agreement. In December, when Cameron attempted to repossess the vehicle, the debtor filed bankruptcy. The petition was filed on December 11, 1997.

The debtor testified that the loan documents were not explained to her and that she did not realize that fees would accumulate monthly.[4] To pay the loan, the debtor testified that she gave cash to her brother who was to see that the loan was repaid. Instead of paying the loan, her brother absconded with the funds. Although that the debtor realized that her brother did not repay the loan, she did not list the debt in her sched-

ules, make any attempt to repay the loan, or contact Cameron or otherwise to obtain the title to the vehicle. The debtor apparently did not attempt to register the vehicle in Arkansas and, indeed, could not have since she did not have the title. This is further evidence that she was aware that the debt was unpaid.

Cameron filed a motion for relief from stay in order to pursue its state law remedies against the Jaguar. The debtor filed a complaint seeking a determination that the automobile is exempt property and the contract—or at least the lien—is void. The debtor asserts that under *Cumberland Capital Corporation v. Patty,* 556 S.W.2d 516 (Tenn. 1977), the customary fee charged by Cameron constitutes a usurious interest rate such that the contract is void. The debtor also argues that since Cameron's fee is not directly related to the costs of operating its business, but is an "automatic" charge, the charge constitutes interest and is usurious. Second, the debtor asserts that under the Tennessee Title Pledge Act, Tenn.Code Ann. § 45–15–101 et seq., Cameron was required to provide notice of the costs of the loan to the debtor. Cameron responds that it complied with the Title Pledge Act in all respects in that the customary fee was actually used to defray costs of the business.

## II.

In 1995, the Tennessee legislature enacted the Title Pledge Act under which the state regulates auto pawnbrokers and their lending practices. Tenn.Code Ann. § 45–15–101 et seq.[5] The statute limits pledge agree-

---

**2.** Cameron's representative testified, via deposition, that it was the normal practice to have prepared and signed a truth in lending disclosure statement and that if debtor signed that form, it would be in Cameron's file. It was uncontroverted that the form did not appear in Cameron's file.

**3.** In light of the extensive efforts Cameron made to locate the debtor, first in Tennessee, then outside of that state, the Court doubts the debtor's assertion that she contacted Cameron to explain that she was moving to Arkansas.

**4.** The representative of Cameron disputes this contention, asserting that the documents were in fact discussed. In any event, it is beyond credu-

lity that anyone would believe that interest and fees would accrue on a debt for only the first month the debt was owing.

**5.** In *Lynn v. Financial Solutions Corp. (In re Lynn),* 173 B.R. 894 (Bankr.M.D.Tenn.1994) the bankruptcy court, in applying the general pawnbroker's act, TennCode Ann. § 45–6–201 et seq., held that since the pawn broker did not take possession of the motor vehicle, the protections of the Pawn Broker's Act of 1988 did not apply. Immediately thereafter, this statute applying to pledges of automobiles was enacted. In addition, it appears that the Pawnbroker's Act was amended to remove the requirement that the requirement that the fee be reasonable. *Compare Lynn,* 173 B.R. at 899 with Tenn.Code Ann.

ments to thirty days and limits interest to two percent. However, the statute authorizes the lender not only to automatically renew the agreement, but also to charge a "customary fee to defray the ordinary costs of operating a title pledge office." The statute expressly provides that the fee is not interest for any purpose of law. The fee plus the interest may not exceed the total unpaid balance due at the inception of any renewal of such agreement. Tenn.Code Ann. § 45–15–111(a). In addition to these charges, the lender is entitled to its actual costs of repossession and attorney's fees. Tenn.Code Ann. § 45–15–111(b). In 1996, the legislature added subsection (c) to section 45–15–111(c). Effective October 1, 1996, a department of the State of Tennessee was directed to promulgate rules for a standard consumer notification and disclosure form which complied with the federal truth in lending laws and to issue regulations requiring use of the form. The subsection imposes no duties upon the lender, but merely requires the state agency to promulgate rules and a form. Although neither party has supplied the regulation, it appears that the Tennessee Department of Financial Institutions noticed proposed regulations on April 15, 1997, and they were adopted and effective on July 1997. The regulations were thus not in effect at the time of the transactions in this case. The Title Pledge Act contains no sanctions for a violation of the Act.

The Tennessee Constitution currently provides as follows:

> The General Assembly shall define and regulate interest, and set maximum effective rates thereof.
>
> If no applicable statute is hereafter enacted, the effective rate of interest collected shall not exceed ten percent (10%) per annum.
>
> All provisions of existing statute regulating rates of interest and other charges on loans shall remain in full force and effect until July 1, 1980, unless earlier amended or repealed.

Tenn. Const. Art. XI, § 7. This provision was adopted by the Convention on December 1, 1977, approved at an election March 7, 1978 and was Proclaimed by the Governor on March 31, 1978. Thus, the Tennessee Constitution requires the legislature to define and regulate interest. If no statute is enacted, the effective rate of interest may not exceed ten percent per annum. Under this version of the Tennessee Constitution, if the legislature establishes a specifically applicable interest rate, the Tennessee Constitution imposes no limit on that rate. If it chooses to establish a limit, the Tennessee Constitution leaves it entirely within the discretion of the legislature to establish a the rate of interest.

In the case of title pledges governed by the Title Pledge Act, the legislature has established an interest rate of two percent. In addition, the lender is entitled to charge a customary fee, which is effectively defined as not interest, with an established limit on that fee. Since the legislature has established a rate, only the first sentence of section 7 of Article XI applies. The second sentence would appear to apply only if no rate is set. Thus, the legislature has established a rate and any Constitutional limits do not apply.

The debtor argues that under *Cumberland Capital Corporation v. Patty,* 556 S.W.2d 516 (Tenn.1977), the customary fee charged by Cameron constitutes a usurious interest rate. *Cumberland* in fact addressed the situation in which additional fees are charged but are not, under the statute, interest. *See generally id.* at 535–36. However, *Cumberland* analyzed a different Constitutional provision. In the seven months following the *Cumberland* decision, the legislature adopted, the electorate approved, and the Governor proclaimed an amendment to Article XI, section 7 to grant the legislature greater authority regarding regulation of the interest rates than existed when *Cumberland* was decided. The provision in *Cumberland* provided the legislature with the authority to provide a conventional rate of interest, but, if it did so, the conventional interest rate could not exceed

---

§ 45–6–210 (1997). The relevant provisions of the Title Pledge Act substantially track the provisions of the Pawnbroker's Act and, like the 1995 amendment to the Pawnbroker's Act, contains no requirement that the fee be reasonable.

ten per cent per annum. · The Constitutional provision currently in effect has no such restriction. Indeed, it has no restriction upon the rate of interest so long as it is established and regulated by the legislature.

■ The Tennessee legislature established an interest rate of two percent and also permits a customary fee. Under the Tennessee Constitution, these items were properly chargeable to the debtor on the loan and are not, under operation of Tennessee law, usurious.[6] *Cf.* Title Pledges—Constitutionality of Customary Fee Provision, Tenn.Op.Atty.Gen. No. 96–052, 1996 WL 147605 (Mar. 26, 1996). By specifically restricting the interest under the Title Pledge Act to exclude the customary fee from the interest calculation, the Tennessee legislature deemed that in the pawn situation a charge on loans that is, effectively, twenty percent, is reasonable. It is not for this Court to determine otherwise.

■ The debtor also argues that Cameron failed to comply with the Tennessee Title Pledge Act. Although it is true that in 1996, subsection (c) of section 45–15–111(c) was amended to require a department of the State of Tennessee was directed to promulgate rules for a standard consumer notification and disclosure, the statute, which was in effect at the time of the transaction, does not require a lender to use the form. Rather, subsection impose the duty upon a state agency to promulgate rules and a form and regulate its use. Inasmuch as the regula-

tions were neither noticed nor effective until after this transaction, there is no violation of the Tennessee statute.

Based upon the foregoing, the complaint to determine the validity, priority and extent of lien will be dismissed. Relief from stay will be granted by separate order.

**ORDERED** that this Adversary Proceeding is Dismissed.

**IT IS SO ORDERED.**

Although Cameron introduced many figures regarding the costs of operation, the testimony of Cameron's representative indicates that the figures were not used in determining the customary fee. Rather, Cameron simply calculated the maximum fee that was allowable under the law and charged it. When questioned regarding the "reasonable relationship" of the fee to the costs of operation, the representative did not understand. The response was that Cameron was entitled to the fee. In spite of the representative's failure to comprehend the requirements of the statute, Cameron introduced evidence regarding the costs of its operation to overcome these infirmities. Although the evidence presented by Cameron related to general overhead, including salary of the representative, monthly telephone charges, furniture and equipment of the operation, these charges appear to be allowable under plain language of the statute.

---

**6.** Under *Cumberland,* the Legislature may not authorize a lender to arbitrarily fix a monthly expense fee nor charge all borrowers the maximum fee in addition to interest. *Cumberland,* 556 S.W.2d at 535. Rather, the service fee must bear a reasonable relation to the expense and service of the lender and, if there is no reasonable relationship, the additional compensation for the use of money constitutes usury. The Title Pledge Act, however, has virtually no limits on the kinds of costs which may be included in the customary fee. Tenn.Code Ann. § 45–15–111. Although Tennessee law generally appears to indicate that lender charges should not include "overhead," such as rents, salaries and loan losses *see, e.g., Pacific Eastern Corp. v. Gulf Life Holding Co.,* 902 S.W.2d 946, 960 (Tenn.Ct.App. 1995); *Cumberland,* 556 S.W.2d 516, the Title Pledge Act provides for charges relating to "the ordinary costs of operating a title pledge office," including salaries and other overhead items. Tenn.Code Ann. § 45–15–111.