# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 2, 2010 Session

## DAWN BROWN ET AL. v. TENNESSEE TITLE LOANS, INC.

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Hamilton County**
**No. 04C1682     Jacqueline E. Bolton, Judge**

_____

**No. E2008-01758-SC-R11-CV - Filed November 29, 2010**

_____

We granted this interlocutory appeal to answer a single question of first impression: whether the Tennessee Title Pledge Act, Tenn. Code Ann. §§ 45-15-101 to -120 (2000), permits a private right of action on behalf of pledgors against title pledge lenders who allegedly charged excessive interest and prohibited fees. The trial court granted the defendant's motion to dismiss plaintiffs' Title Pledge Act allegations for failure to state a claim, and the Court of Appeals reversed. We hold that the Title Pledge Act does not expressly create an individual private right of action, and plaintiffs have not carried their burden of establishing that the legislature intended to imply such a right. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals**
**Reversed and Case Remanded to the Circuit Court for Hamilton County**

CORNELIA A. CLARK, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

J. Bartlett Quinn, Stephen D. Barham, and Justin L. Furrow, Chattanooga, Tennessee, for the appellant, Tennessee Title Loans, Inc.

James R. Kennamer, Chattanooga, Tennessee, for the appellees, Dawn Brown, Anne Devries, Carly Hahn, and Greg Walton.

**OPINION**

Background

Dawn Brown, Anne Devries, Carly Hahn, and Greg Walton ("Plaintiffs") filed the initial complaint in this action on October 27, 2004, and then filed an amended complaint on January 31, 2005. Because the case comes to us in the posture of Tennessee Title Loans, Inc.'s ("Defendant") motion to dismiss the amended complaint for failure to state a claim, we accept the allegations of the amended complaint as true. See Leach v. Taylor, 124 S.W.3d 87, 90 (Tenn. 2004). Plaintiffs brought this case as a putative class action on behalf of all those who had a title pledge loan with Defendant and paid interest or fees on that loan "within the year preceding the filing of this Complaint and thereafter." In the title pledge transaction, Defendant loaned money to each Plaintiff in exchange for a security interest in Plaintiff's motor vehicle. Each Plaintiff delivered the certificate of title for his/her vehicle to Defendant while retaining possession of the vehicle for the duration of the loan agreement. Upon paying the total amount due within a specified period of time, each Plaintiff had the right to redeem his/her vehicle title. If any Plaintiff defaulted on the loan, Defendant had the right to take possession of that Plaintiff's vehicle and to sell the vehicle after the expiration of a grace period.

The amended complaint alleged that Plaintiffs and putative class members were charged interest in excess of the statutory maximum set forth in the Tennessee Title Pledge Act ("TTPA") and/or charged fees not allowed by the TTPA. See Tenn. Code Ann. § 45-15-111(a) (2000). Specifically, Defendant allegedly charged a prohibited "redemption premium fee" for redeeming the loan, calculated based on the date the loan was paid. The amended complaint alleged a violation of the TTPA because the redemption premium fee was not allowed. See id. It also alleged a violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §§ 47-18-101 to -125 (2001), because Defendant misrepresented to Plaintiffs that the redemption premium fee was lawful under the TTPA. Plaintiffs sought class certification pursuant to Tennessee Rule of Civil Procedure 23. Among their requested remedies, Plaintiffs requested rescission of the title pledge loan agreements and an award of punitive damages for Defendant's fraud.

Defendant originally moved to compel arbitration, citing identical clauses in the title pledge agreements signed by each of the Plaintiffs. The trial court granted the motion to compel arbitration. Subsequently, the trial court granted Plaintiffs' application for permission to file an interlocutory appeal, see Tenn. R. App. 9. The Court of Appeals granted Plaintiffs' request for an interlocutory appeal and ultimately reversed, holding that the arbitration clause was unconscionable and unenforceable because it reserved access to a judicial forum for Defendant but restricted Plaintiffs to arbitration. See Brown v. Tenn.

Title Loans, Inc., 216 S.W.3d 780, 787 (Tenn. Ct. App. 2006) (citing Taylor v. Butler, 142 S.W.3d 277 (Tenn. 2004)), perm. app. denied (Feb. 26, 2007).

Defendant filed its motion to dismiss for failure to state a claim on April 26, 2007. Defendant argued that the facts alleged by Plaintiffs, including the contents of the loan agreements that Plaintiffs attached as exhibits to their pleadings, established that Defendant did not violate the TTPA by charging prohibited fees or excessive interest.

Although the parties had not originally raised the issue, the trial court subsequently requested that the parties file supplemental briefs on the question of whether a private right of action existed under the TTPA.[1]  On May 19, 2008, the trial court issued an order dismissing the individual and classwide TTPA claims because the TTPA provided no private right of action.  The trial court also dismissed the class allegations under the TCPA in light of this Court's holding that TCPA claims are inappropriate for class certification.[2]  See Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 313 (Tenn. 2008).  The trial court did not dismiss the individual TCPA claims.

The trial court then granted Plaintiffs' application for permission to file an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9 on the issue of whether the TTPA provides a private right of action.  The Court of Appeals granted Plaintiffs' application for permission to appeal and stayed proceedings in the trial court.  The intermediate court then reversed the judgment of the trial court, holding that the TTPA "does create a private right of action in favor of pledgors for violations of the [TTPA] by predatory lenders."  See Brown v. Tenn. Title Loans, Inc., No. E2008-01758-COA-R9-CV, 2009 WL 2213487, at *6 (Tenn. Ct. App. July 24, 2009).

## Standard of Review

A motion to dismiss a complaint for failure to state a claim filed pursuant to Tennessee Rule of Civil Procedure 12.02(6) "'admits the truth of all of the relevant and material allegations contained in the complaint, but it asserts that the allegations fail to

---

[1] According to Defendant's supplemental briefing in the trial court, the issue regarding the private right of action first arose during a February 26, 2008 hearing on Plaintiffs' motion to compel discovery. Plaintiffs' counsel informed the trial court that he intended to dismiss the TCPA claim because it could not be certified on a classwide basis.  Defendant's counsel then asked the trial court to dismiss the entire litigation, arguing that the TTPA did not provide for a private right of action.  The trial court deferred its ruling until the parties filed their supplemental briefs.  The transcript of the February 26, 2008 hearing is not part of the record.

[2] This issue has not been appealed.

establish a cause of action.'" Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 516 (Tenn. 2005) (quoting Leach, 124 S.W.3d at 90). We accept as true all factual allegations in the complaint. Id. We review de novo the trial court's legal conclusions, including the determination that the TTPA does not contain a private right of action. Tenn. R. App. P. 13(d); Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn. 1997).

Analysis

Determining whether a statute creates a private right of action is a matter of statutory construction. Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc., 978 S.W.2d 91, 93 (Tenn. 1998). Our essential duty in statutory construction is to determine and implement the legislature's intent without limiting or expanding the statute's coverage beyond what the legislature intended. Id.; Hawks v. City of Westmoreland, 960 S.W.2d 10, 16 (Tenn. 1997). When the existence of a private right of action depends on the contents of the statute, "our courts are not privileged to create such a right under the guise of liberal interpretation of the statute." Premium Fin. Corp., 978 S.W.2d at 93; see Hogan v. McDaniel, 319 S.W.2d 221, 223 (Tenn. 1958) ("Judicial legislation has long been regarded by the legal profession as unwise, if not dangerous business."). The authority to create a private right of action pursuant to statute is the province of the legislature. Premium Fin. Corp., 978 S.W.2d at 93; Reed v. Alamo Rent-a-Car, Inc., 4 S.W.3d 677, 689 (Tenn. Ct. App. 1999).

To determine whether the legislature intended to create a private right of action for excessive interest and prohibited fees, we begin with the express statutory language. See Ergon, Inc. v. Amoco Oil Co., 966 F. Supp. 577, 584 (W.D. Tenn. 1997); Premium Fin. Corp., 978 S.W.2d at 93. Here, there is no dispute that the express language of the TTPA does not create such a right of action on behalf of a title pledgor against a title pledge lender—whether in the specific section prescribing the interest and fees that title pledge lenders may charge, Tenn. Code Ann. § 45-15-111(a), or elsewhere.[3]

If a statute does not expressly create a private right of action, our next inquiry is whether the legislature otherwise indicated an intention to imply such a right in the statute. Premium Fin. Corp., 978 S.W.2d at 93; Reed, 4 S.W.3d at 689. In this analysis, we look to the statutory structure and legislative history. Id. Appropriate factors to consider include (1)

_____

[3] By contrast, the legislature expressly granted a private right of action in the TCPA. Under that statute, "[a]ny person who suffers an ascertainable loss . . . as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages." Tenn. Code Ann. § 47-18-109(a)(1) (2001); see Myint v. Allstate Ins. Co., 970 S.W.2d 920, 925 (Tenn. 1998).

whether the party bringing the cause of action is an intended beneficiary within the protection of the statute, (2) whether there is any indication of legislative intent, express or implied, to create or deny the private right of action, and (3) whether implying such a remedy is consistent with the underlying purposes of the legislation.[4] Ergon, 966 F. Supp. at 583-84; Buckner v. Carlton, 623 S.W.2d 102, 105 (Tenn. Ct. App. 1981), superseded by statute on other grounds, Act of May 24, 1984, ch. 972, 1984 Tenn. Pub. Acts 1026, as recognized in Lucas v. State, 141 S.W.3d 121, 129, 137 (Tenn. Ct. App. 2004); see Premium Fin. Corp., 978 S.W.2d at 93. The burden ultimately falls on the plaintiff to establish that a private right of action exists under the statute. Premium Fin. Corp., 978 S.W.2d at 93 (citing Ergon, 966 F. Supp. at 585); Gillespie v. City of Memphis, No. W2007-01786-COA-R3-CV, 2008 WL 2331027, at *9 (Tenn. Ct. App. June 5, 2008).

*Overview of Statutory Scheme*[5]

The General Assembly originally enacted the TTPA in 1995, following a United States Bankruptcy Court decision holding that a title pledge loan did not satisfy the requirements of a "pawn transaction" under the Tennessee Pawnbrokers Act, Tenn. Code Ann. §§ 45-6-201 to -220 (1993). See Act of April 20, 1995, ch. 186, § 13, 1995 Tenn. Pub. Acts 266, 270-76 (codified as amended at Tenn. Code Ann. §§ 45-15-101 to -120 (2000)); Lynn v. Fin. Solutions Corp. (In re Lynn), 173 B.R. 894, 900 (Bankr. M.D. Tenn. 1994). According to the TTPA's original statement of purpose:

> The making of title pledge loans vitally affects the general economy of this state and the public interest and welfare of its citizens. It is the policy of this state and the purpose of this chapter to:
>
> (1)     Ensure a sound system of making title pledge loans through licensing of title pledge lenders;

---

[4] These factors originally appeared in the United States Supreme Court's opinion in Cort v. Ash, which set forth the standard for determining whether a private right of action is implicit in a federal statute. See 422 U.S. 66, 78 (1975). Cort also articulated a fourth factor—whether the cause of action is traditionally relegated to state law—which is inapplicable to the interpretation of state statutes and, therefore, omitted from the analysis. See Ergon, 966 F. Supp. at 584 n.9. Buckner was the first Tennessee decision to analyze the three applicable Cort factors to determine whether a Tennessee statute implied a private right of action.

[5] Plaintiff filed the original complaint on October 27, 2004 and then filed the amended complaint on January 31, 2005. The TTPA was amended later in 2005. See Act of May 27, 2005, ch. 440, 2005 Tenn. Pub. Acts 1045. The parties do not dispute that, in determining whether a private right of action existed when Plaintiffs filed this action, we consider the version of the TTPA that existed before the enactment of the 2005 amendments. Accordingly, we discuss that prior version of the statute in our overview of the statutory scheme.

(2)     Provide for licensing requirements;

(3)     Ensure financial responsibility to the public; and

(4)     Assist local governments in the exercise of their police power.

Tenn. Code Ann. § 45-15-102 (2000). These purposes are regulatory and penal in nature. See Premium Fin. Corp., 978 S.W.2d at 94.

The TTPA legalizes loans by licensed title pledge lenders on pledges of personal property certificates of title and pledges of titled personal property. Id. § 45-15-104(a) (2000). Among other provisions, the TTPA sets forth the eligibility requirements necessary to obtain a license, id. § 45-15-106 (2000), and prescribes the contents of the petition for the license that the would-be lender must submit to the county clerk in the county where the lender will operate, id. § 45-15-107 (2000). Lenders must record all loan agreements that they execute, making those records available for inspection by municipal and county law enforcement, id. § 45-15-109(a), (c) (2000), and must also record all liens on the certificate of title in a title pledge transaction, id. § 45-15-110 (2000). The TTPA further caps the length of pledge agreements at thirty (30) days, permitting renewals for thirty-day periods in most circumstances;[6] allows the lender to take possession of titled property if the pledgor defaults; and prescribes a twenty-day holding period before the lender may sell the unredeemed property. Id. §§ 45-15-113(a), -114(b) (2000).

Section 45-15-111(a), the provision that Defendant allegedly violated in this case, caps the interest that title pledge lenders may charge at two percent (2%) per month. It also allows lenders to charge "a customary fee to defray the ordinary costs of operating a title pledge office." Id. That fee must not exceed one-fifth of the original principal amount of the loan, or of the total unpaid balance due at the beginning of any renewal. Id. The TTPA separately enumerates other "[p]rohibited actions" by title pledge lenders in section 45-15-115 (2000).[7] The legislative councils of incorporated municipalities, cities, and tax districts

---

[6] Pledge agreements may not be renewed if the pledgor has redeemed the property or title certificate, surrendered all interest in the property to the lender, or defaulted on the agreement, or if the lender has previously notified the pledgor in writing that the agreement will not be renewed. Tenn. Code Ann. § 45-15-113(a)(1)-(4).

[7] Title pledge lenders are prohibited from: (1) accepting pledges from underaged or intoxicated persons, or those known to have been convicted of certain felonies; (2) agreeing to any recourse other than taking possession of the titled property and selling the property if the pledgor defaults; (3) loaning more than $2,500 in pledge for any single certificate of title; (4) accepting a pledgor's waiver of any statutory right or protection; (5) failing to exercise reasonable care in protecting property in the lender's possession; (6)
(continued...)

may adopt additional rules and regulations, although they may not regulate in certain enumerated areas already covered by the statute.[8] Id. § 45-15-118 (2000).

At the time Plaintiffs filed this action, the TTPA provided for enforcement of its provisions entirely through criminal and administrative penalties. Id. § 45-15-117 (2000). A knowing violation of the TTPA is a class A misdemeanor. Id. § 45-15-117(a). Additionally, through the 1996 amendments, the county clerk, at the direction of the department of financial institutions, shall suspend the license of a title pledge lender who knowingly violates department rules that require the lender to issue a standardized notification and disclosure form prior to executing a loan agreement. Act of Mar. 21, 1996, § 3, 1996 Tenn. Pub. Acts at 227 (codified at Tenn. Code Ann. § 45-15-117(b)(1)). A repeated, persistent pattern of knowing violations of those rules will result in a longer suspension and potentially a revocation of the license altogether.[9] Id. We have previously stated, "[w]here an act as a whole provides for governmental enforcement of its provisions, we will not casually engraft means of enforcement of one of those provisions unless such legislative intent is manifestly clear." Premium Fin. Corp., 978 S.W.2d at 94; see Thomas & Assocs., Inc. v. Metro. Gov't, No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *10 (Tenn. Ct. App. June 6, 2003); Reed, 4 S.W.3d at 690.

Having concluded our overview of the statutory structure, we now turn to the three factors relevant to deciding whether the legislature intended to imply a private right of action in the TTPA.

---

[7](...continued)
purchasing titled personal property in business operations; (7) maintaining more than one place of operation per lender per license; (8) remaining open outside of specified hours of operation; (9) knowingly violating the requirement to issue a disclosure and notification form prior to executing the loan agreement, in compliance with regulations promulgated by the department of financial institutions; and (10) entering a pledge agreement with a pledgor who does not present clear title to the pledged property. Tenn. Code Ann. § 45-15-115.

[8] Local governments cannot regulate in the areas of interest or fees, operating hours, nature of the title pledge lender's business or the types of agreements, pledgor eligibility, or license requirements. Tenn. Code Ann. § 45-15-118.

[9] Accordingly, prior to the promulgation of the department's regulations pursuant to the 1996 amendments, the TTPA "contain[ed] no [civil] sanctions for a violation" of the statute, Henley v. Cameron Auto Pawn (In re Henley), 228 B.R. 425, 427 (Bankr. E.D. Ark. 1998), but was enforced entirely through criminal prosecution for knowing violations of its provisions.

*Plaintiffs as Intended Beneficiaries*

The first factor is whether the party bringing the cause of action is an intended beneficiary within the protection of the statute. Pledgors such as Plaintiffs are within the protection of the TTPA and stand to benefit from its provisions. The TTPA prohibits the title pledge lender from "[a]ccept[ing] any waiver . . . of any right or protection accorded a pledgor" under the statute. Tenn. Code Ann. § 45-15-115(4). The legislative history confirms that pledgors are the intended beneficiaries of the TTPA. In particular, Senator Cooper, the sponsor of the 1995 Act, explained that section 45-15-111(a)'s cap on the interest and fees that lenders could charge incidental to the loan was intended to protect the pledgor-consumer.

The mere fact that the legislature enacted the TTPA to protect and benefit pledgors is not alone sufficient, however, to imply a private right of action. See Ellison v. Cocke Cnty., Tenn., 63 F.3d 467, 470 (6th Cir. 1995); Reed, 4 S.W.3d at 689-90. We must also consider the remaining two factors in the inquiry.

*Legislative Intent*

The second factor is whether there is any indication of legislative intent, express or implied, to create or deny a private right of action. Plaintiffs bear the burden of establishing the evidence of legislative intent to create such a right.

We have reviewed the TTPA's entire legislative history and found nothing that would support Plaintiffs' contention that the legislature intended to imply a private right of action in the TTPA. As noted previously, the stated purposes were regulatory and penal in nature. According to Senator Cooper, the cap on fees came about after district attorneys general had threatened prosecution of title pledge lenders for price-gouging if the lenders did not "clean up their act." Nothing in Senator Cooper's comments suggests that, in addition to the criminal penalties for knowing violations of the TTPA, the legislature intended to allow private enforcement of the fee cap. Therefore, Plaintiffs can point to nothing in the legislative history that would make it "manifestly clear" that the legislature intended to engraft a private right of action onto the governmental means of enforcement provided for in the TTPA. See Premium Fin. Corp., 978 S.W.2d at 94.

While we recognize that "legislative inaction is generally irrelevant to the interpretation of existing statutes," Freeman Indus., LLC, 172 S.W.3d at 519, we also note that "nonaction by a legislative body . . . may become significant where proposals for legislative change have been repeatedly rejected." Jo Ann Forman, Inc. v. Nat'l Council on Comp. Ins., Inc., 13 S.W.3d 365, 373 (Tenn. Ct. App. 1999). To that end, Defendant directs

our attention to at least eight bills introduced since the enactment of the 2005 amendments that would expressly grant a private right of action to title pledge borrowers against title pledge lenders but that have not become law.  See 2009 Tenn. S.B. 1766; 2009 Tenn. S.B. 1765; 2009 Tenn H.B. 1498; 2009 Tenn H.B. 1497; 2007 Tenn. S.B. 1584; 2007 Tenn. S.B. 1558; 2007 Tenn. H.B. 2132; 2007 Tenn. H.B. 1984.  As a representative example, House Bill 1984, originally introduced in the 105th General Assembly on February 15, 2007, would replace the existing section 45-15-119 with a new provision that begins as follows:

> In addition to the administrative remedies provided in the preceding section, any title pledge borrower aggrieved by a violation of any of the provisions of this title by a title pledge lender shall be entitled to bring a civil lawsuit against such title pledge lender in a court of competent jurisdiction within two (2) years of the reasonable date discovery [sic] of such violation.

Speaking before the Utilities, Banking, and Small Business Subcommittee of the House Commerce Committee and before a summer study committee, Webb Brewer, who drafted the model legislation that became House Bill 1984 at the request of Deputy Speaker Turner, stated his understanding that the TTPA lacked an express right of action as presently written.[10]  He further opined that the TTPA was ambiguous as to whether such right of action existed because the TTPA "doesn't speak to that at all."  In the 106th General Assembly, House Bill 1498, containing identical language on the express private right of action, failed in the Utilities and Banking Subcommittee of the House Commerce Committee.  Therefore, following the enactment of the 2005 amendments, despite the legislature's knowledge of the ambiguous silence in the existing statute, it has repeatedly considered and ultimately refused to adopt a provision that would expressly create a private right of action under the TTPA and establish a two-year statute of limitations for a title pledgor to bring a civil action against a title pledge lender for a TTPA violation.[11]

Ulitmately, we conclude that the TTPA's history does not indicate a legislative intent, whether express or implied, to create a private right of action for excessive interest and prohibited fees.  We now turn to the third and final factor of the inquiry.

---

[10] At the time that Mr. Brewer appeared before these committees, he was Litigation Director for Memphis Area Legal Services.

[11] This proposed language is similar to what the legislature included in the TCPA (and other statutes). That language has been available to the legislature even before it originally enacted the TTPA in 1995. Despite being presumptively aware of the language that it has used to create express private rights of action in other statutory schemes, the legislature has not yet included that language in the TTPA.

*Underlying Purposes*

The third and final factor is whether an implied right of action would be consistent with the purposes of the statute. The TTPA was enacted to establish a "sound system of making title pledge loans through licensing of title pledge lenders," which included the creation of "licensing requirements." Tenn. Code Ann. § 45-15-102(1)-(2). While the TTPA sought to "[e]nsure financial responsibility to the public," it achieved that financial responsibility by "[a]ssist[ing] local governments in the exercise of their police power." Id. § 45-15-102(3)-(4). The TTPA empowers local governments to exercise their police power by criminal sanctions. A knowing violation of "any of the provisions" of the TTPA is a class A misdemeanor, id. § 45-15-117, punishable by imprisonment and/or fine, id. § 40-35-111(e)(1) (2010). In addition to these criminal penalties, a knowing violation of rules concerning the issuance of standardized forms prior to executing a pledge agreement will result in the suspension and potentially the revocation of the lender's license. Id. § 45-15-117(b). In short, the TTPA was designed to regulate the title pledge lending industry, especially through the licensure of lenders, and was governmentally enforced through criminal and administrative sanctions.

The courts of this state have refused to imply a private right of action in regulatory statutes enforced through governmental remedies. Our jurisprudence reflects the United States Supreme Court's maxim that "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." Transam. Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979); see Ellison, 63 F.3d at 470 (describing courts as "especially reluctant" to imply additional remedies in a statute that expressly provides a remedy). Accordingly, in Premium Finance Corp., we determined that the Premium Finance Company Act was "structured so as to evince a clear design to *regulate* the premium finance industry" and accomplished that regulatory function through many of the same mechanisms used in the TTPA: requiring companies to be licensed, prescribing the contents of financial agreements, and setting interest rates. 978 S.W.2d at 94. The act's enforcement provisions were limited to criminal sanctions and administrative penalties. Id. Because the "act as a whole provide[d] for governmental enforcement of its provisions," we declined to "casually engraft means of enforcement of one of those provisions unless such legislative intent is manifestly clear." Id. We found no such manifestly clear intention and dismissed a premium finance company's claim under the act against the defendant insurers for failure to return unearned premiums. Id.

Similarly, in Petty v. Daimler/Chrysler Corp., the Court of Appeals reviewed Tennessee's motor glass vehicle safety statute. 91 S.W.3d 765, 768 (Tenn. Ct. App. 2002), perm. app. denied (Sept. 9, 2002). That statute was codified "[a]s part of the equipment and

lighting regulations for motor vehicles," required the use of safety glass in motor vehicles, and authorized the commissioner of the department of safety to approve particular types of glass as safety glass. Id. The statute's sole remedy lay with the commissioner, who had the authority to suspend the registration of a motor vehicle that did not comply. Id. Because "[t]he only remedy provided by the statute [was] to be had by the State," the Court of Appeals held that the plaintiff car purchaser had no private right of action against the defendant car manufacturer. Id.

Finally, in Reed v. Alamo Rent-A-Car, Inc., the Court of Appeals reviewed a provision of the Tennessee Workers' Compensation Law concerning the commissioner of labor's establishment of a case management system to coordinate medical care. 4 S.W.3d 677, 689 (Tenn. Ct. App. 1999), perm. app. denied (Oct. 4, 1999). The intermediate court explained that, "[v]iewed in its entirety, the Workers' Compensation Law provides for governmental enforcement of its provisions," including the department of labor's establishment and collection of penalties for certain violations. Id. at 690. Therefore, even though the Court of Appeals acknowledged that the plaintiff employee was an intended beneficiary of the statute, it "decline[d] to . . . engraft additional requirements onto the enforcement scheme designed by the legislature." Id. Accordingly, the court held there was no implied private right of action against plaintiff's employer for negligent performance of case management duties. Id.[12]

Like the statutory schemes analyzed in these cases, the TTPA is a regulatory statute enforced through governmental remedies. Accordingly, the implication of a private right of action would be inconsistent with the TTPA's purposes as set forth by the legislature.

*Existence of Statute of Limitations*

Notwithstanding the analysis above, Plaintiffs attempt to satisfy their burden of establishing that the legislature intended to imply a private right of action by invoking the TTPA's statute of limitations: "[n]o action shall be brought by a pledgor against a title pledge lender in connection with a title pledge agreement or property pledge agreement more than one (1) year after the date of the alleged occurrence of any violation of this chapter." Tenn. Code Ann. § 45-15-104(b). In other words, Plaintiffs argue that the mere inclusion of a

---

[12] But see Owens v. Univ. Club of Memphis, No. 02A01-9705-CV-00103, 1998 WL 719516, at *11 (Tenn. Ct. App. Oct. 15, 1998) (inferring private right of action in tip statute, Tenn. Code Ann. § 50-2-107 (1991), on behalf of plaintiff service employees because statute was intended to protect them and private right would "complement[] the [criminal] remedy in the statute by providing a mechanism to make employees whole") (no Tenn. R. App. P. 11 application filed).

statute of limitations is tantamount to implied legislative intent to create a private right of action.

Plaintiffs provide no case law to support the proposition that a statute of limitations provision should be alone sufficient to imply a private right of action. Indeed, Plaintiffs rely on a case involving a statutory scheme that, by their own admission, did not have a statute of limitations. In Pratt v. Smart Corp., the Court of Appeals held that the Medical Records Act of 1974 authorized a private cause of action by a patient against the independent copying service that processed the plaintiff's request for her hospital records and allegedly charged unreasonable fees. 968 S.W.2d 868, 872-73 (Tenn. Ct. App. 1997). The Court of Appeals held that the Medical Records Act "clearly contemplates private actions to remedy violations of its terms" because the statute contained a "provision for the recovery of 'actual damages in a civil action for willful or reckless or wanton' violations" of the statute. Id. at 872-73 (quoting Tenn. Code Ann. § 68-11-311(b) (1992)). Because the Medical Records Act has no statute of limitations and because the version of the TTPA in effect here had no provision for the recovery of actual damages for violations of any of its terms, Pratt is unhelpful in resolving the question before us.

Additionally, Plaintiffs have not cited, and we have not independently discovered, any Tennessee decision inferring a private right of action in a statutory scheme with its own statute of limitations. Therefore, we have reviewed decisions from other jurisdictions concerning implied rights of action in statutory schemes that contain a limitations provision (or some other language prescribing the time in which suit may be brought). The results, admittedly, are mixed. Compare Davenport v. Wash. Educ. Ass'n, 197 P.3d 686, 691, 695 (Wash. Ct. App. 2008) (holding that statutory provision did not confer express or implied right of action, where another provision in the statutory scheme imposed a five-year statute of limitations), cert. granted, 166 Wash. 2d 1005 (Wash. 2009), and Miller v. Weaver, 66 P.3d 592, 598 (Utah 2003) (refusing to find implied private right of action for statutory violations on the basis of "mere allusion" to bringing a civil action in a staying provision), with Bailey v. Defenbaugh & Co. of Cleveland, Inc., 513 F. Supp. 232, 240-41 (N.D. Miss. 1981) (finding an implied right of action because the statutory scheme contained a limitations provision and, therefore, exclusive enforcement by the state would defeat legislative intent).

As we stated in Premium Finance Corp., "[a]lthough the decisions of our sister states are persuasive, they do not substitute for our own stated principles for determining whether a statute creates a cause of action." 978 S.W.2d at 93. "We must give effect to every word, phrase, clause, and sentence in constructing a statute." Cohen v. Cohen, 937 S.W.2d 823, 828 (Tenn. 1996). The legislative history is entirely silent concerning the statute of limitations provision in section 45-15-104(b). Here, instead of creating a private right of action, the TTPA's statute of limitations has the effect of modifying the general statutes of

limitations that would otherwise apply to causes of action that title pledgors can bring under the common law "in connection with" a title pledge agreement. See Tenn. Code Ann. § 45-15-104(b). Pursuant to Tennessee Code Annotated section 28-3-101 (2000), "[a]ll civil actions . . . shall be commenced after the cause of action has accrued, within the periods prescribed in this chapter, *unless otherwise expressly provided*." (Emphasis added).

Accordingly, if the TTPA did not have its own limitations provision, the statutes of limitations set forth in Title 28, Chapter 3 would control. For example, without the TTPA's statute of limitations, title pledgors would have six years after the accrual of a cause of action for breach of contract to bring suit against the title pledge lender. See Tenn. Code Ann. § 28-3-109(a)(3) (2000). Similarly, title pledgors would ordinarily have three years from accrual to bring an action for common-law fraud, see id. § 28-3-105(1) (2000), and/or conversion, see id. § 28-3-105(2). However, the TTPA "otherwise expressly provide[s]" the time in which title pledgors may bring their actions. Therefore, when the title pledgor brings a common law action against a title pledge lender "in connection with a title pledge agreement," id. § 45-15-104(b), the specific one-year statute of limitations in the TTPA prevails over the general statutes of limitations in Title 28, Chapter 3.[13] See Dobbins v. Terrazzo Mach. & Supply Co., 479 S.W.2d 806, 809 (Tenn. 1972); see also Brewer v. Lincoln Brass Works, Inc., 991 S.W.2d 226, 229-30 (Tenn. 1999). This construction gives effect to the TTPA's statute of limitations while respecting the legislature's decision to enforce the statute through criminal penalties and its silence concerning its intentions whether to create a private right of action.

The subsequent history of the TTPA supports the conclusion that the legislature did not intend to imply a private right of action in the version of the statute that was in effect when Plaintiffs filed this action. The 2005 amendments included express private rights of action in two specific circumstances. First, where the title pledge lender makes a loan without a license, that loan is void, and the statute allows the pledgor to bring an action against the lender to recover the sums paid and the property pledged, as well as attorney's fees and costs. Act of May 27, 2005, ch. 440, § 4, 2005 Tenn. Pub. Acts 1045, 1047-48 (codified at Tenn. Code Ann. § 45-15-105(b) (2007)). Second, the 2005 amendments require an applicant for a title pledge license to obtain a surety bond or irrevocable letter of credit in specified amounts. Id. § 5, 2005 Tenn. Pub. Acts at 1049 (codified at Tenn. Code Ann. § 45-15-106(d)(3) (2007)). The subparagraph then goes on to state that, in the event of the title pledge lender's non-payment, the unpaid person may sue the lender on the surety bond

---

[13] The general statute of limitations for misdemeanors requires that a criminal prosecution commence within twelve months after the commission of the offense. Tenn. Code Ann. § 40-2-102(a) (2006). Therefore, the TTPA's statute of limitations does not alter the time frame for bringing a criminal action for a knowing violation of the TTPA, which is a class A misdemeanor.

or irrevocable letter of credit. Id., 2005 Tenn. Pub. Acts at 1049-50. Upon enacting the 2005 amendments to the TTPA, the legislature was presumptively aware of the statute of limitations that it had already enacted. See Lee Medical, Inc. v. Beecher, 312 S.W.3d 515, 527 (Tenn. 2010); Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008). Nonetheless, the legislature explicitly authorized pledgors to sue unlicensed lenders and unpaid persons to sue lenders on the surety bond or irrevocable letter of credit. The subsequent inclusion of certain express private rights of action in the 2005 amendments cuts against Plaintiffs' argument that, by previously including a statute of limitations, the legislature expressed its manifestly clear intent to imply a private right of action on behalf of title pledgors to enforce the TTPA's provisions.

## Conclusion

Since the Tennessee Title Pledge Act provides no express private right of action on behalf of pledgors against title pledge lenders for charging excessive interest and prohibited fees, Plaintiffs bear the burden of establishing that the legislature was "manifestly clear" in its intent to imply a private right of action. Plaintiffs have not carried that burden, and we "are not privileged to create such a right under the guise of liberal interpretation of the statute." Premium Fin. Corp., 978 S.W.2d at 93.

Therefore, we hold that, at the time Plaintiffs filed this action, the Tennessee Title Pledge Act contained no private right of action on behalf of pledgors against title pledge lenders for charging excessive interest and prohibited fees. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the trial court's judgment granting Defendant's motion to dismiss Plaintiffs' cause of action under the Tennessee Title Pledge Act for failure to state a claim. We remand this case to the Hamilton County Circuit Court for the litigation of Plaintiffs' remaining claims, including their individual claims pursuant to the Tennessee Consumer Protection Act. We tax the costs of this appeal to Plaintiffs Dawn Brown, Anne Devries, Carly Hahn, and Greg Walton, and their surety, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, CHIEF JUSTICE