IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs, July 2, 2018

## TEAL PROPERTIES, INC. v. DOG HOUSE INVESTMENTS, LLC, ET AL.

Appeal from Davidson County Circuit Court
No. 17C2547        Kelvin D. Jones III, Judge

_____

No. M2018-00257-COA-R3-CV
_____

The dispositive issue on appeal is whether co-owners of a limited liability company who signed a commercial lease agreement on behalf of the entity are personally liable for the lessee's obligations when they signed the agreement twice: once on a line preceded by the text "By:" and followed on the next line by the text "Title:" and a second time on a line below which the signatory's name was typed, followed by the word "Individually." After the lessor filed suit against the lessee company and the co-owners individually to collect utilities and tax payments allegedly owed under the lease agreement, the co-owners filed a motion to dismiss for failure to state a claim on which relief could be granted, arguing that the lease contains no provisions that make them personally liable for the lessee's obligations. The trial court granted the co-owners' motion, and lessor appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which CHARLES D. SUSANO JR. and BRANDON O. GIBSON, J.J., joined.

Paul M. Buchanan, Manchester, Tennessee, for the appellant, Teal Properties, Inc.

J. Brad Scarbrough and Chris Holleman, Brentwood, Tennessee, for the appellees, Steve Lassiter and Nancy Purvis.

**OPINION**

Plaintiff, Teal Properties, Inc. ("Teal"), owns approximately 9,000 square feet of office and warehouse space in Nashville, Tennessee. Steve Lassiter and Nancy Purvis (collectively, "Lassiter and Purvis") jointly own Dog House Investments, LLC ("Dog House"), which entity leased the premises from Teal for a four-year term beginning on

June 1, 2009, and ending on May 31, 2013, and with two additional five-year option periods.

During the first option period, in October of 2017, Teal filed suit for breach of contract against Dog House, Lassiter and Purvis for failure to make the required payments for utilities and taxes plus attorneys' fees. In November of 2017, Dog House, Lassiter and Purvis filed an answer in which they denied all of Teal's breach of contract claims. Additionally, Lassiter and Purvis jointly filed a motion to dismiss all claims against them individually. They argued that the complaint failed to state a claim on which relief could be granted against them individually because only Dog House was obligated under the lease. More specifically, they argued, *inter alia*:

(1) The Parties to the Lease attached to the Complaint (the "Lease") in this action are identified as Teal Properties, Inc., Lessor, and Dog House Investments, LLC, Lessee. Neither Steve Lassiter nor Nancy Purvis is identified as a Party to the Lease, the Lessee of the leased premises or as guarantor on the Lease.

(2) All obligations set forth in the Lease are imposed on "Lessor" (*i.e.,* Teal Properties, Inc.), "Lessee" (*i.e.*, Dog House Investments, LLC) or both. The Lease imposes no obligations on either Steve Lassiter or Nancy Purvis.

(3) There is no language in the Lease that demonstrates that the Parties intended either Steve Lassiter or Nancy Purvis to be personally liable/responsible for the Lessee's obligations under the Lease.

(4) The Complaint does not allege an enforceable contract between Teal Properties, Inc. and either Steve Lassiter or Nancy Purvis and does not allege a specific act or omission constituting nonperformance amounting to breach of the Lease by either Steve Lassiter or Nancy Purvis.

In December of 2017, Teal filed its response to the motion, relying on the fact that the lease contained two signature lines, the second of which appeared above the word "Individually," and that Lassiter and Purvis signed on both lines. Teal also relied on Section 9 in the lease, which refers to certain obligations regarding UCC creditors described in more detail below, as evidence that Lassiter and Purvis executed the lease in their individual capacities and not merely as representatives of Dog House. In January of 2018, the trial court granted the motion to dismiss all claims against Lassiter and Purvis, and Teal appealed.

## ISSUE

The sole issue raised in this appeal is whether the trial court erred in finding that Lassiter and Purvis were not personally liable under the lease in question.[1]

## STANDARD OF REVIEW

A Tenn. R. Civ. P. 12.02(6) motion to dismiss challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The resolution of a Rule 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Id.* A defendant who files a motion to dismiss "admits the truth of all of the relevant and material allegations contained in the complaint, but it asserts that the allegations fail to establish a cause of action." *Id.* (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)).

When considering a motion to dismiss, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Id.* (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007)). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Id.* (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo. *Id.* (citing *Brown*, 328 S.W.3d at 855).

## ANALYSIS

It is well settled that a claim for breach of contract requires "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (quoting *ARC LifeMed, Inc., v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). It is the first of these elements that is in question in this appeal: whether the lease is enforceable against Lassiter and Purvis in their individual capacities.

---

[1] Lassiter and Purvis request this court to remand this case to the trial court with instructions for the trial court to award them costs and attorneys' fees in accordance with Tenn. Code Ann. § 20-12-119(c); however, they did not expressly identify this as an issue in their brief as required by Tenn. R. App. P. 27(a)(4). "Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals." *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). Therefore, this issue is not properly before the court.

When interpreting a contract, the court's role is to ascertain the intention of the parties. *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). This intention is ascertained "based on the ordinary meaning of the language contained within the four corners of the contract." *Id*. (citing *Kiser v. Wolfe*, 353 S.W.3d 741, 748 (Tenn. 2011)).

Teal maintains that two facts about the lease bind Lassiter and Purvis personally. The first is that both Lassiter and Purvis signed the lease twice. The first signature by each of them appears in a space preceded by the text "By:" and followed by the text "Title:", after which Lassiter and Purvis each handwrote "Co-owner." The second signature appears just below the first on a line below which is typed the signatory's name and the word "Individually."

After correctly noting that the Statute of Frauds dictates that a contract to pay the debts of another must be signed by the guarantor, Tenn. Code Ann. § 29-2-101(a)(2) (2000), Teal relies on two Tennessee Supreme Court cases to support its claim that Lassiter and Purvis are personally obligated as guarantors of the obligations of Dog House: *84 Lumber Co.*, 356 S.W.3d 380 (Tenn. 2011) and *MLG Enters. LLC v. Johnson*, 507 S.W.3d. 183 (Tenn. 2016).

Teal relies on the Court's statements in *84 Lumber* for the principle that "[a] representative who signs a contract may be personally bound […] when the clear intent of the contract is to bind the representative." 356 S.W.3d at 382-83. As for *MLG Enterprises*, Teal relies principally on the following statement, "Where a contract bears two signatures by the same individual, the first of which is undisputedly in a representative capacity, we should be hesitant to render the second a nullity merely because the party's signature is followed by the word 'for' and the company name." 507 S.W.3d. at 188 (quoting *MLG Enters., LLC v. Johnson*, No. M2014-01205-COA-R3-CV, 2015 WL 4162722, at *8 (Tenn. Ct. App. July 9, 2015), perm. app. granted (Tenn. Dec. 10, 2015) (McBrayer, J., dissenting) (other citations omitted)).

Despite some similarities with the case at bar, the cases Teal relies on are distinguishable in one crucial respect. In both *84 Lumber* and *MLG Enterprises*, the contracts contained explicit and unambiguous language stating that the signatories were personally assuming the liabilities of their respective entities. Here, there is no language making Lassiter or Purvis personally liable for any obligation of Dog House, with one possible exception that is not at issue.[2]

---

[2] This section of the lease pertains to the agreement not to subordinate the lease to any filed UCC creditors and to notify lessor of any UCC creditor filings upon consummation of the lease, which we discuss later in this opinion.

In *84 Lumber*, the contract at issue was a commercial credit application that identified Allstates Building Systems, LLC, as a limited liability company and R. Bryan Smith as its president. 356 S.W.3d at 381. Significantly, the application, which formed the basis of the breach of contract claim, stated the following immediately above Mr. Smith's signature:

> BY SIGNING BELOW I HEREBY CERTIFY THAT I AM THE OWNER, GENERAL PARTNER OR PRESIDENT OF THE ABOVE BUSINESS, AND I DO UNCONDITIONALLY AND IRREVOCABLY PERSONALLY GUARANTEE THIS CREDIT ACCOUNT AND PAYMENTS OF ANY AND ALL AMOUNTS DUE BY THE ABOVE BUSINESS, AND THAT I HAVE READ ALL OF THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS APPLICATION AND UNDERSTAND AND AGREE TO THE SAME, AND THAT ALL OF THE INFORMATION CONTAINED IN THIS APPLICATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

*Id.* at 381-82 (capitalization in original). Thus, by signing the contract, Mr. Smith personally guaranteed the account and "payment of any and all amounts due" by Allstates. *Id.* at 382. The lease at issue in this appeal contains no such language.

In *MLG Enterprises*, the last numbered paragraph of the lease reads as follows:

37. PERSONAL LIABILITY:

In consideration of Landlord entering into this Lease with Tenant, Richard L. Johnson hereby agrees that he shall be personally liable for all of Tenant's obligations under this Lease and executes this Lease for this purpose.

507 S.W.3d. at 184.

Immediately following this paragraph, the lease provides "IN WITNESS WHEREOF, Landlord and Tenant have respectively signed this Lease on the dates and the places set forth below." *Id.* Three spaces for signatures follow this text: one for the lessor's representative and two for Mr. Johnson. *Id.* at 184-85.

As the Supreme Court noted in its decision:

The first signature space, located on the right side of the Lease, provides "LANDLORD: MLG ENTERPRISES LLC" followed by a signature line preceded by "By:." This signature line bears the handwritten signature of Michael L. Griffith. Directly below the signature line appears the typed text

- 5 -

"Michael L. Griffith President/Owner." The typed text "EXECUTED BY LANDLORD, THIS ___ DAY OF OCTOBER, 2007" appears opposite the signature space on the left side of the Lease.

The second signature space, located on the right side of the Lease and below the first signature space, provides "TENANT: MOBILE MASTER MANUFACTURING LLC" followed by a signature line preceded by "By:." This signature line bears the handwritten signature of Richard L. Johnson followed by the handwritten indication "(C.E.O.)." Directly below the signature line appears the typed text "Richard L. Johnson President/Owner." The typed text "EXECUTED BY Tenant, THIS ___ DAY OF OCTOBER, 2007" appears opposite the signature space on the left side of the Lease.

The third signature space, located on the right side of the Lease and below the second signature space, provides a signature line beneath which appears the typed text "Richard L. Johnson." On this line is the handwritten signature "Richard L. Johnson" followed by the handwritten words "for Mobile Master Mfg. LLC." To the left of this signature appears the typed text "EXECUTED BY Richard L. Johnson, THIS ___ DAY OF OCTOBER, 2007."

*Id.*

Here, the parties are identified in the "Lease Agreement" as follows:

1.  PARTIES. THIS LEASE dated [June] 1, 2008, by and between Teal Properties, Inc., whose record address is 470 Craighead Street, Nashville, Tennessee 37204, hereinafter called Lessor, and Dog House Investments, LLC., whose record address is 470 Craighead Street, Nashville, Tennessee, 37204, hereinafter called Lessee;

Near the end of the lease, paragraph 31 reads as follows:

31.  ENTIRETY OF UNDERSTANDING IN WRITTEN LEASE. It is agreed that the entire understanding between the parties is set out in the lease and any riders which are hereto annexed, that this lease supersedes and voids all prior proposals, letters and agreements, oral or written, and that no modification or alteration of the lease shall be effective unless evidenced by an instrument in writing signed by both parties. The law of the state where the lease premises are situated shall apply.

The signatures appear at the end of the lease in the following manner:

LESSEE:

Dog House Investments, LLC

BY: _____ DATE: 5-27-08
Steven Lassiter

TITLE: Co. Owner _____

_____
Steven Lassiter, Individually

Dog House Investments, LLC

BY: _____ DATE: 5-27-08
Nancy Purvis

TITLE: Co-owner _____

_____
Nancy Purvis, Individually

LESSOR:

TEAL PROPERTIES, Inc.

BY: _____ DATE: 5-27-08
Jerry L. Teal

TITLE: _____

Teal contends in its brief that the Supreme Court in *MLG Enterprises* held "that a second signature on a lease agreement was sufficient to bind one individually as a guarantor of the tenant's obligation under the lease." This, however, is not a precise or complete statement of the holding in this case. While the second signature was relied on to bind the signatory personally, that fact alone would have been inconsequential but for the explicit and unambiguous language in paragraph 37 of the MLG lease. Thus, it was the combined effect of Johnson's second signature <u>and</u> the explicit and unambiguous language that made Johnson personally liable for the tenant's obligations. As we noted earlier, the lease at issue in this appeal contains no such language.

As the Court noted in a case similar to the one at bar:

**Where an agreement naming in the body of the instrument the parties bound thereby is signed by a third person not named therein, he cannot be regarded as one of the principal obligors**, and the question has frequently arisen as to whether this constitutes a sufficient memorandum to bind him as a guarantor or surety for the parties named. In such a case,

- 7 -

since oral evidence is necessary to show the undertaking of a person so signing, it is generally held that there is not a sufficient memorandum of an agreement to become surety or guarantor. **Thus, where a person not named in a lease as a party thereto signs the lease, it is held that to allow his liability as a guarantor for the lessee to be established by oral evidence would be violative of the statute**.

*In re Estate of Dickerson*, 600 S.W.2d 714, 717 (Tenn. 1980) (quoting 72 Am. Jur. 2d *Statute of Frauds* § 316 (1974) at 836-37) (emphasis added).

Here, we remain faithful to the "substance over form" principle enunciated in *MLG Enterprises* by holding that the formal inclusion of the single word "Individually" cannot by itself convey personal liability upon a signatory when the body of the lease is otherwise devoid of any assumption of personal obligation or guarantor status. This holding is also consistent with this court's decision in a similar case in which the inclusion of the word "individually" after a signature was deemed insufficient to establish the signatory's personal liability as guarantor in a lease that did not explicitly indicate that this was the parties' intention. *Brooks v. Networks of Chattanooga*, 946 S.W.2d 321, 327 (Tenn. Ct. App. 1996).

Nevertheless, Teal relies on Section 9 of the lease to argue that Lassiter and Purvis are personally obligated to satisfy the obligations of Dog House. Section 9 states: "Lessee further agrees to personally insure that this lease will not be subordinated in any manner as to any or all filed UCC creditors, and will notify Lessor of any UCC creditor filings upon consummation of this lease." Again, we disagree with Teal's contention regarding this language, which we find misplaced for two reasons. First, the subject of the sentence in question is not Lassiter and Purvis; it is the "Lessee", which the lease clearly identifies as Dog House Investments, LLC. Thus, it is Dog House which makes this assurance, not Lassiter or Purvis. Such a reading is more consistent with the language of the rest of the lease than is the strained interpretation that Teal asks this court to adopt.

The second reason this contention fails is that the "personal" assurance in Section 9 is limited to the promises not to subordinate the lease to any filed UCC creditors and to notify lessor of any UCC creditor filings upon consummation of the lease. Teal has not asserted a claim for breach of the subordination and notice provisions. For these reasons, Teal's reliance on Section 9 is misplaced.

**IN CONCLUSION**

The judgment of the trial court is affirmed. Costs of appeal are assessed against Teal Properties, Inc.

_____
FRANK G. CLEMENT JR., P.J., M.S.