# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 2, 2025 Session

## TAMMALA THOMPSON v. STATE OF TENNESSEE

**Appeal from the Claims Commission for the State of Tennessee, Middle Division**
**No. 0546-GL-23-0308737-001     James A. Halton, Commissioner**
_____

### No. M2025-00518-COA-R3-CV
_____

This appeal arises from a premises liability action commenced by Tammala Thompson ("Plaintiff") for injuries she sustained while camping for the weekend at Cedars of Lebanon State Park ("the Park"). Plaintiff alleges that the State of Tennessee ("the State"), which owns and operates the Park, is liable for her injuries because the State negligently maintained an unsafe sidewalk. Relying upon the affirmative defense provided by the Tennessee Recreational Use Statute ("the TRUS"), the State filed a motion to dismiss the complaint. Plaintiff opposed the motion arguing that she was not engaged in recreational activity when the injury occurred because she was walking on a sidewalk; thus, the TRUS is not applicable. She also asserted that sidewalks are "improvements" which are not expressly exempted from liability under the TRUS. Finding the TRUS applicable and that no exceptions applied, the Claims Commission granted the State's motion to dismiss. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Court at Middle Division Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Leah Yoder and Rocky McElhaney, Hendersonville, Tennessee, for the appellant, Tammala Thompson.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; Eric W. Donica, Assistant Attorney General; and Leah E. Traub, Assistant Attorney General, for the appellee, the State of Tennessee.

# OPINION

## FACTS AND PROCEDURAL HISTORY

The State owns and operates a campground located at Cedars of Lebanon State Park where Plaintiff rented a campsite to stay from Friday, June 23, 2023, through Sunday, June 25, 2023. On the morning of June 24, 2023, Plaintiff walked to the bathroom along a paved sidewalk without incident. While walking back on the sidewalk to return to her campsite, Plaintiff tripped and fell where the sidewalk intersected a roadway, hitting her head. She subsequently experienced symptoms including headaches, dizziness, confusion, memory issues, and slurred speech.

Photographs were taken which revealed that the sidewalk was lower than the roadway where they intersected. A park ranger, who conducted an incident report, informed Plaintiff that the uneven intersection had been painted yellow, but the paint had faded over time, and Plaintiff states that she did not notice the uneven surface or paint before she fell.

Plaintiff commenced this action by filing a complaint on July 29, 2024, with the Claims Commission for the State of Tennessee. The Complaint alleged that Tennessee Code Annotated § 9-8-307(a)(1)(H) and (C) is controlling, which provides that the State may be held liable for "[n]egligently created or maintained dangerous conditions on state controlled real property" and the "[n]egligent construction of public sidewalks and buildings." In particular, the complaint alleges that the State owed a duty of care to visitors that was breached when the State failed to safely maintain the sidewalk and failed to warn of the hazardous condition. Consequently, Plaintiff sought damages for current and future physical pain, emotional suffering, healthcare expenses, loss of enjoyment of life, and loss of earnings.

The State filed its Answer on October 14, 2024, admitting that it owned the Park while denying liability. The State also asserted the affirmative defense afforded under the TRUS, contending the action was barred under Tennessee Code Annotated § 70-7-102(a).

Thereafter, the State filed a motion to dismiss relying on the affirmative defense afforded under the TRUS. Plaintiff filed a response in opposition to the motion arguing, inter alia, that the TRUS does not apply because walking on a sidewalk is not a recreational activity covered by the TRUS. She also contended the TRUS does not apply to "improvements" such as sidewalks.

During the hearing on the motion on February 6, 2025, Plaintiff made an oral motion to amend the complaint, which motion was granted. An agreed order granting Plaintiff's oral motion to amend her complaint and denying the motion to dismiss without prejudice was filed on February 19, 2025.

After Plaintiff filed her amended complaint, the State filed its second motion to dismiss, again relying on the TRUS. Plaintiff filed a response in opposition to the motion based on the same arguments as previously asserted. For the convenience of the Commissioner and the parties, the parties waived oral argument and relied upon the previously filed memorandum of law, exhibits, and oral arguments made at the hearing on the initial motion to dismiss.

The Commissioner filed an order granting the State's motion to dismiss on April 8, 2025, reasoning, in pertinent part, as follows:

> The "State's general liability for negligently maintained real property is subject to statutory immunity in certain cases. Tennessee Code Annotated §§ 70-7-101 et seq. provides the State with limited immunity for injuries occurring on state-owned property during recreational use." *See Parent*, 991 S.W.2d at 240; *see also Mathews*, 2005 WL 3479318, at *1 (Tenn. Ct. App. Dec. 19, 2005). In *Mathews*, the Court of Appeals agreed with the Claims Commission that the TRUS applies "the moment a visitor enters the property for a recreational purpose, even if the visitor has not yet begun the recreational activity." *Id*.

> The operation of the recreational use statute is straightforward. The statute codified at Tenn. Code Ann. § 70-7-102 is an affirmative defense available to persons who fit within the definition of "landowner" in Tenn. Code Ann. § 70-7-101(2), if they can prove that the injured person was engaged in a recreational activity at the time of the injury. *See Morgan*, 2004 WL 170352 at *4. A plaintiff may defeat the affirmative defense in three ways: (1) prove that the defendant is not a "landowner," (2) prove the injured party was not engaged in a recreational activity, or (3) prove the landowner's conduct fits within one of the exceptions in Tenn. Code Ann. § 70-7-104. *Id*.

The Commissioner found it undisputed that the State owned the Park, thus the first TRUS element was satisfied. As for the second element, whether Plaintiff was engaged in recreational activity, the Commissioner noted that the complaint specifically asserts that Plaintiff was at the State Park "for the purpose of camping" and further noted that "camping is a recreational activity specifically listed in Tennessee Code Annotated § 70-7-102."

The Commissioner then addressed Plaintiff's assertion that dismissal of her complaint was not appropriate because "there are questions as to whether walking to the bathroom is covered by the TRUS, whether the TRUS only applies to natural/raw land versus structures built on the land, and whether Tenn. Code Ann. § 9-8-307 is applicable instead of the RUS." As for these contentions, the Commissioner reasoned:

Tennessee appellate courts have considered and rejected those arguments. The primary case on point is *Matthews v. State*, 2005 WL 349318 (Tenn. Ct. App. Dec. 19, 2005). While visiting a state park, the plaintiff slipped and fell on an irregularity in a sidewalk, causing an injury. The Claims Commission applied the TRUS and dismissed the lawsuit. On appeal, Court of Appeals affirmed, finding the "recreational use statute prevents the plaintiff from recovering for her injury because she was engaging in a recreational activity and/or entering onto land for the purpose of engaging in a recreational activity." In that case, the plaintiff argued the TRUS did not apply because she was not engaged in a recreational activity at the time she sustained the injury. The Court rejected the argument finding the TRUS applies the moment the visitor entered the property for a recreational purpose, even if the visitor is not engaged in the recreational activity. *Id.* *4. *See also Pierce v. State*, 2021 WL 2627509 (Tenn. Ct. App. June 25, 2021); *Morgan v. State*, 2004 WL 170352 (Tenn. Ct. App. Jan. 27, 2004).

Based on the foregoing reasoning, the Commissioner held that the second TRUS element was satisfied.

Thus, the remaining question regarding the application of the recreational use statute was whether one of the two exceptions set forth in Tennessee Code Annotated § 70-7-104(a) applied, and the Commissioner ruled that neither statutory exception applied.

The Commissioner then engaged in an analysis of the numerous cases the parties had cited in support of their respective contentions. After conducting that analysis, the Commissioner held that the State is immune pursuant to the TRUS and granted the State's motion to dismiss.

This appeal followed.

**ISSUES**

Plaintiff presents the following issues on appeal:[1]

(1) Whether the TRUS is applicable to this case to immunize the State from liability.

(2) Whether a concrete sidewalk, which is a man-made improvement, is subject to the TRUS.

---

[1] Plaintiff raised three issues on appeal which we rephrased and consolidated in two issues.

- 4 -

The State's sole issue is whether the Claims Commission properly applied this court's precedent in dismissing the claim under the TRUS.

## STANDARD OF REVIEW

"Our standard of review on appeal from a trial court's grant of a motion to dismiss is *de novo*, with no presumption of correctness as to the trial court's legal conclusions, and all allegations of fact in the complaint below are taken as true." *Chambless v. Rutledge*, 699 S.W.3d 913, 921 (Tenn. Ct. App. 2024) (quoting *Brown v. Ogle*, 46 S.W.3d 721, 726 (Tenn. Ct. App. 2000)).

A Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). "The resolution of a Rule 12.02(6) motion to dismiss is determined by examining the pleadings alone." *Id.* "A defendant who files a motion to dismiss 'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Id.* (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)).

When considering a motion to dismiss, "courts 'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Id.* (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31–32 (Tenn. 2007)). "A trial court should grant a motion to dismiss 'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Id.* (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). The trial court's legal conclusions regarding the adequacy of the complaint are reviewed de novo. *Id.*

We review questions of statutory interpretation de novo. *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 723 (Tenn. 2024). "When a statute is clear, we apply the plain meaning without complicating the task. Our obligation is simply to enforce the written language." *In re Est. of Tanner*, 295 S.W.3d 610, 613–14 (Tenn. 2009) (citations omitted). To do so, as explained by our Supreme Court, "[w]e give the words of a statute their 'natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022) (citation omitted) (quoting *Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015)). Further "[w]e endeavor to construe statutes in a reasonable manner which avoids statutory conflict. We 'must presume that the Legislature did not intend an absurdity and adopt, if possible, a reasonable construction which provides for a harmonious operation of the laws.'" *Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016) (citation omitted) (quoting *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)).

ANALYSIS

I.

The statutory right to assert a premises liability claim against the State as a landowner is codified at Tennessee Code Annotated § 9-8-307(a)(1)(C). *See Parent v. State*, 991 S.W.2d 240, 242 (Tenn. 1999) (citing *Sanders v. State*, 783 S.W.2d 948 (Tenn. Ct. App. 1989) (recognizing that Tenn. Code Ann. § 9-8-307(a)(1)(C) removes the State's immunity and codifies the common law obligations of the owner or occupier of land). The cause of action is under the exclusive jurisdiction of the Tennessee Claims Commission. *Id*. Consequently, monetary claims against the State for dangerous or defective conditions on real property are subject to the procedures, guidelines, and monetary award caps of the claims commission. *Id*.

The TRUS provides an affirmative defense to a landowner, including the State of Tennessee, when a visitor is injured during recreational use of the property. *See Morgan v. State*, No. M2002-02496-COA-R3-CV, 2004 WL 170352, at *4 (Tenn. Ct. App. Jan. 27, 2004). Under the TRUS, a landowner "owes no duty of care to keep [the landowner's] land or premises safe for entry or use by others for [certain] recreational activities." Tenn. Code Ann. § 70-7-102(a). The landowner need not "give any warning of hazardous conditions, uses of, . . . or activities on [the landowner's] land or premises," subject to limited exceptions. *See id.*

A properly asserted affirmative defense under § 102 of the TRUS requires a three-step analysis:

> First, the court must determine whether the party asserting the Tenn. Code Ann. § 70-7-102 defense is a landowner. Second, the court must determine whether the activity in which the injured party was engaged at the time of the injury is a recreational activity. Third, the court must determine whether any of the exceptions in Tenn. Code Ann. § 70-7-104 are applicable to the case.

*Morgan v. State*, 2004 WL 170352, at *4 (citing *Parent*, 991 S.W.2d at 242–43).

Regarding the first step, a "landowner" under the TRUS includes "any governmental entity" that is "the legal title holder or owner of such land or premises, or the person entitled to immediate possession of the land or premises, and includes any lessee, occupant or any other person in control of the land or premises." *Pierce v. State*, No. M2020-00533-COA-R3-CV, 2021 WL 2627509, at *5 (Tenn. Ct. App. June 25, 2021) (citing Tenn. Code Ann. § 70-7-101(2)(A)–(B)). Here, it is undisputed that the State is the landowner of the Park. Thus, as the Commissioner correctly found, the first element is satisfied.

As for the second element, Plaintiff contends she was not engaged in a recreational activity at the time of the injury; thus, the TRUS does not apply. The Commissioner found this argument unpersuasive and so do we.

Finally, regarding the third element, it is undisputed that neither of the exceptions in § 70-7-104 apply. Accordingly, our analysis will focus on the second element in the context of Plaintiff's issues on appeal.

Our reasoning in *Costner v. Maryville-Alcoa-Blount County Parks & Recreation Commission*, No. E2021-00189-COA-R3-CV, 2022 WL 3092906 (Tenn. Ct. App. Aug. 3, 2022) is instructive. In *Costner,* the plaintiff was injured when she stepped in a hole while attending a concert. After she sued for injuries she sustained, the trial court dismissed the case finding the TRUS barred recovery. *Id.* at *2. On appeal, we affirmed noting that "the statute applies the moment a visitor enters the property for a recreational purpose, even if the visitor has not yet begun the recreational activity." *Id*. at *8 (citing *Mathews*, 2005 WL 3479318, at *4 (Tenn. Ct. App. Dec. 19, 2005). And as we explained in *Mathews v. State*, No. W2005-01042-COA-R3-CV, 2005 WL 3479318 (Tenn. Ct. App. Dec. 19, 2005):

> [T]he landowner owes no duty of care to keep the premises safe for "entry or use by others" provided the "other" enters or uses the property for "recreational activities." The Tennessee Supreme Court, in *Parent v. State,* noted that the statute's employment of the phrase "such recreational activities as" indicated that this list is neither exclusive nor exhaustive. *Parent,* 991 S.W.2d at 242. Additionally, the language used in the statute indicates that it applied the moment a visitor enters the property for a recreational purpose, even if the visitor has not yet begun the recreational activity; it stated that a landowner "owes no duty of care to keep such land . . . safe *for entry or use* by others for such recreational activities." T.C.A. § 70-7-102 (2001) (emphasis added).

> .     .     .

> In this case, Plaintiff argues on appeal that the statute does not apply because she was not engaged in a recreational activity at the time she sustained her injuries. This argument is of no avail. Plaintiff's testimony at trial established that her purpose in entering the Park was to attend Archeofest, hike, and take a hayride. The Claims Commission ruled that the activities in which the Plaintiff intended to engage at the Park constituted "hiking," "sightseeing," and/or "historical studies" within the meaning of the recreational use statute, and that the statute applied as soon as the Plaintiff

entered upon the land for the purpose of engaging in such a recreational activity. We agree.

*Mathews*, 2005 WL 3479318 at *4 (emphasis in original).

Here, Plaintiff's complaint affirmatively states that she was in the Park for the purpose of camping, and it is undisputed that she paid for a campsite at the Park to stay from Friday June 23, 3032 to Sunday, June 25, 2023. We also note that camping is a recreational activity listed in Tennessee Code Annotated § 70-7-102. Thus, the TRUS applied as soon as Plaintiff entered the Park for the purpose of camping. *See id.* ("[T]he statute applied as soon as the Plaintiff entered upon the land for the purpose of engaging in such a recreational activity.").

II.

The foregoing notwithstanding, Plaintiff contends the State may not rely on the TRUS as a defense because a sidewalk is an improvement and the TRUS does not apply to improvements to the land or premises. Plaintiff summarizes this argument in her appellate brief as follows:

> The General Assembly explicitly defines what "land" or "premises" includes and what those terms do not include in the TRUS.
>
> Tenn. Code Ann. § 70-7-101(A) defines land and premises as "all real property, waters, private ways, trees and any ***building or structure*** that might be located on real property, waters and private ways." (emphasis added).
>
> Tenn. Code Ann. § 70-7-101(B) defines land and premises as "real property, waters, private ways, trees and any ***building or structure*** located on the land or premises…." (emphasis added).
>
> Neither § 70-7-101(A) or (B) define "land" and "premises" to include any improvement.
>
> In contrast however, the General Assembly includes the word "improvement" in the exclusions to land and premises definitions in Tenn. Code Ann. § 70-7-101(1)(C) ("does not include the landowner's principal place of residence ***and any improvements*** erected for recreational purposes that immediately surround such residence, including, but not limited to, swimming pools, tennis or badminton courts, barbecue or horse shoe pits, jacuzzies, hot tubs or saunas.") (emphasis added).

- 8 -

Based on the above reasoning, Plaintiff contends the legislature understood there is a difference between a structure and an improvement; otherwise, the legislature would not have used different words.

The State counters asserting there is no distinction between "land" and "improvement," and regardless, any distinction is irrelevant. The State summarizes its argument in its appellate brief as follows:

> Under the RUS, "land" or "premises" includes "real property." Tenn. Code Ann. § 70-7-101(1)(A). And real property includes "anything . . . attached to," or "more or less permanently added to [land]." BLACK'S LAW DICTIONARY, *Property* (12th ed. 2024). This includes "[b]uildings and *improvements* of all kinds." *Id.* (emphasis added). Thus, there is no distinction between "land" and "improvement."

We have determined, as the Commissioner did, that the State has the better argument.

The relevant portion of the TRUS reads as follows:

> (1)(A) "Land" or "premises" means and includes all real property, waters, private ways, trees and any building or structure that might be located on real property, waters and private ways;
>
> (B) "Land" or "premises" includes real property, waters, private ways, trees and any building or structure located on the land or premises, owned by any governmental entity, including, but not limited to, the Tennessee valley authority; and
>
> (C) "Land" or "premises" does not include the landowner's principal place of residence and any improvements erected for recreational purposes that immediately surround such residence, including, but not limited to, swimming pools, tennis or badminton courts, barbecue or horse shoe pits, jacuzzis, hot tubs or saunas;

Tenn. Code Ann. § 70-7-101(1)(A)–(C).

"When the statute does not define a term, we may [also] 'look to authoritative dictionaries' to determine the term's meaning." *Davis v. Reilly*, 683 S.W.3d 739, 743 (Tenn. 2024); *see also State v. Welch*, 595 S.W.3d 615, 622 (Tenn. 2020) ("When the legislature does not provide a specific definition for a statutory term, this court may look to other sources, including *Black's Law Dictionary*, for guidance." (quoting *State v. Ivey*, No. E2017-02278-CCA-R3-CD, 2018 WL 5279375, at *6 (Tenn. Crim. App. Oct. 23, 2018)))."

"Land or premises" is defined in Tennessee Code Annotated § 70-7-101(A) as "all real property, waters, private ways, trees and any building or structure that might be located on real property, waters and private ways." Likewise, in Tennessee Code Annotated § 70-7-101(B), "land or premises" is defined as "real property… and any building or structure located on the land or premises owned by any governmental entity[.]"

"Improvements" are not included in either definition. "Improvements" are, however, referenced in Tennessee Code Annotated § 70-7-101(1)(C), which exempts "the landowner's principal place of residence and any improvements erected for recreational purposes that immediately surround such residence, including, but not limited to, swimming pools, tennis or badminton courts, barbecue or horse shoe pits, jacuzzies, hot tubs or saunas." Notably, "improvements" in this context refers only to recreational improvements made to and immediately around a landowner's residence. The sidewalk at issue here was not made to or anywhere near a residence. Thus, the term improvement has no application or relevance to the issue at hand.

Moreover, we are unpersuaded by Plaintiff's argument that the legislature intended "building," "structure," and "improvement" to have distinct meanings and purposes. To the contrary, we are persuaded by the fact that the definition of "land or premises" in the statute includes "real property" and "any building or structure located on the real property." Tenn. Code Ann. §§ 70-7-101(A)–(B). While real property is not a defined term in the statute, Black's Law Dictionary defines "real property" as "anything . . . attached to . . . or "more or less permanently added to the land" and "includes buildings and improvements of all kinds."[2] Because a sidewalk is "more or less permanently added to the land," the sidewalk at issue here falls under the umbrella of real property. Thus, the sidewalk is within the statutory definition of "land or premises" in the TRUS.

Furthermore, this court has repeatedly held that the TRUS applies to man-made improvements. In *Mathews v. State,* the plaintiff was injured in an analogous manner when she tripped and fell on an irregularity in a sidewalk while at the park to attend Archeofest, hike, and take a hayride. 2005 WL 3479318, at *1, *4. Notably, the court found here that the TRUS applied the moment the claimant arrived on the premises, regardless of whether the claimant was engaged in a recreation act at the exact time of the injury. *Id.* at *4. In *Beckham v. City of Waynesboro*, No. M2023-00654-COA-R3-CV, 2024 WL 2153536 (Tenn. Ct. App. May 14, 2024), *appeal denied* (Sept. 12, 2024), this court held that an injury from slipping on a diving board at a public pool fell under the TRUS. In *Bates v. City of Chattanooga*, No. E2024-00857-COA-R3-CV, 2025 WL 1577911 (Tenn. Ct. App. June 4, 2025), the plaintiff sustained personal injuries when he fell down a flight of stairs at a public golf course and this court held that the TRUS protected the city of Chattanooga from liability. All the above structures were man-made improvements, and in each case

---

[2] Black's Law Dictionary, *Property* (12th ed. 2024).

- 10 -

we found that the TRUS afforded the landowner an affirmative defense. We reach the same conclusion here.

For completeness, we acknowledge Plaintiff's public policy argument claiming the applicability of the TRUS is too broad. As Plaintiff asks in her brief, "Where does it end?" Nevertheless, the function of our courts is to interpret the law, not to address the prudence of a public policy decision. *See Lavin v. Jordan*, 16 S.W3d 362, 369 (Tenn. 2000). Accordingly, we will not address this issue.

As our analysis reveals, the applicability of the TRUS to injuries occurring when on a property for the purpose of recreational use is firmly established. And the facts in this case lead to one conclusion, that the TRUS applies, not Tennessee Code Annotated § 9-8-307, because Plaintiff entered the park for the purpose of camping over the weekend and no exceptions apply. As the court stated in *Pierce*, "[W]hat Tennessee Code Annotated section 9-8-307(a)(1)(C) does to remove immunity from the State, the recreational use statute taketh away." *Pierce v. State*, No. M2020-00533-COA-R3-CV, 2021 WL 2627509, at *5 (Tenn. Ct. App. June 25, 2021).

For the foregoing reasons, we affirm the trial court's decision that the TRUS bars this claim.

## In Conclusion

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Tammala Thompson.

_____
FRANK G. CLEMENT JR., P.J., M.S.

- 11 -